UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC and<br>AVR AH LLC,<br>　　　　　Debtors[1]<br>AVR AH LLC; STRUDEL HOLDINGS LLC; CHARIF SOUKI; and KARIM SOUKI, CHRISTOPHER SOUKI, and LINA RIZZUTO, as Trustees of the SOUKI FAMILY 2016 TRUST.<br><br>　　　Plaintiffs,<br><br>v.<br><br>NINETEEN77 CAPITAL SOLUTIONS A LP; BERMUDEZ MUTUARI, LTD; WILMINGTON TRUST NATIONAL ASSOCIATION, and UBS ASSET MANAGEMENT (AMERICAS) LLC,<br><br>　　　Defendants. | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered)<br><br>Adv. Pro. No. 23-09003 |

**DEFENDANTS' EMERGENCY MOTION FOR ENTRY OF A PARTIAL
<u>FINAL JUDGMENT PURSUANT TO FRCP 54(b)</u>**

> **Emergency relief has been requested. Relief is requested not later than June 27, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1]　　The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AVR AH LLC (0148) and Strudel Holdings LLC (5426). The Debtors' service address is: PO Box 4068, Aspen, CO 81612.

1

Defendants/Counterclaim-Plaintiffs Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd. (together with Nineteen77 Capital Solutions A LP, "Lenders"), Wilmington Trust National Association (the "Administrative Agent"), and UBS Asset Management (Americas) LLC ("UBS" and together with Lenders and the Administrative Agent, the "Secured Parties") hereby move for entry of a final judgment pursuant to Federal Rules of Civil Procedure 58(b)(2)(B) and 54(b), made applicable through Federal Rules of Bankruptcy Procedure 7058 and 7054: (i) in favor of the Secured Parties and against Plaintiffs/Counterclaim-Defendants AVR AH LLC ("AVR"), Strudel Holdings LLC ("Strudel" and together with AVR, the "Debtors"), Karim Souki, Christopher Souki, and Lina Rizzuto, as Trustees of the Souki Family 2016 Trust (the "Trust"), and Charif Souki in his individual capacity ("Souki") dismissing with prejudice all of the causes of action asserted in the Objection to Claims and First Amended Complaint [Dkt. No. 9]; and (ii) in favor of the Secured Parties and against Souki and the Debtors on Count I (Breach of Contract Against Charif Souki in His Individual Capacity Under the Loan Agreement for Failure to Repay Debt) and Count II (Breach of Contract Against Strudel and AVR as Guarantors Under the Loan Agreement for Failure to Repay Debt)[2] of the Secured Parties' Counterclaims in the amount of $92,748,038.17 plus post-judgment interest thereon running from the date that judgment is entered, and in support of this motion states as follows:

## INTRODUCTION

1. Following Souki's initial default under the Loans in May 2020, the Secured Parties spent considerable time and resources attempting to negotiate an out-of-court resolution with

---

[2] As explained further below, this motion does not seek entry of a final judgment against the Trust on the Secured Parties' counterclaims because further proceedings are needed to determine the scope of the Trust's liability due to a purported limitation of liability solely as to the Trust in the applicable contracts.

Souki and his guarantors. Decision (defined below) at 3-4. As an accommodation to Souki, and to facilitate negotiations over Souki's repayment following his default, the Secured Parties forbore from exercising their remedies under the loan documents for two and a half years, through November 2022. *Id.* at 9. When the Secured Parties finally began to exercise their contractual rights and remedies, Souki and his affiliates responded by suing the Secured Parties in New York State Court to invalidate the debt and, when that proved unsuccessful, by filing the Debtors for bankruptcy and recommencing the same lawsuit in this Court. *Id.* at 2, 9-10. Notwithstanding Souki's years of evasion, and even after prevailing at trial in the Adversary Proceeding, the Secured Parties gave Souki yet another chance to resolve this dispute consensually by agreeing to mediation. Unfortunately, the mediation has now also proven unsuccessful. The Secured Parties are left with no choice but to respectfully request that the Court grant this motion to enter judgment against Souki and the Debtors for the full amount still due and owing on the loans and against all of the Adversary Proceeding Plaintiffs dismissing the claims they asserted against the Secured Parties. As the Court is well aware, the Secured Parties have been attempting to recover their principal and interest for close to four years now. Entry of final judgment is appropriate so that the Secured Parties can take steps to recover the amounts the Court has now held they are owed.

2. In its April 1, 2024 *Memorandum Decision and Order* [Dkt. No. 133] (the "Decision"),[3] the Court denied all of the claims asserted by the Debtors, Souki, and the Trust in their Objection to Claims and First Amended Complaint, and found in favor of the Secured Parties on their breach of contract counterclaims, holding that the Debtors, Souki, and the Trust are liable to the Secured Parties for "at least $100 million" under the Loans. *See* Decision at 32, ¶ 2. The

---

[3] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Decision.

3

Secured Parties deferred seeking entry of a final judgment while the parties mediated issues concerning the sale of assets to generate cash to satisfy the liability confirmed in the Decision. Despite attending an in-person session with Judge Isgur, the parties were unable to come to an agreement and the mediation was terminated as of June 4. *See* Dkt. No. 146.

3. Each of the Debtors and Souki are jointly and severally liable for the full amount of the Loan Obligations.[4] After applying the proceeds of the Ranch sale, Souki, in his capacity as borrower, and the Debtors, in their capacities as Guarantors, owe the Secured Parties $92,748,038.17 (the "Judgment Amount").[5] The calculations to support Judgment Amount are set forth on **Exhibit A**.

4. Determining the amount of the Trust's liability for the Judgment Amount, however, will take additional time and effort. The Loan Agreements contain a provision that purports to

---

[4] During Trial, the 2017 Loan Agreement was admitted as Secured Parties' Exhibit 113, and the 2018 Loan Agreement was admitted as Secured Parties' Exhibit 379 (together, the "Loan Agreements").

Section 7.1 of the Loan Agreements (Guaranty of Obligations) provides that "[e]ach Guarantor, *jointly and severally* with the other Guarantors, hereby irrevocably and unconditionally guaranties to the Administrative Agent for the ratable benefit of the Secured Parties the due and punctual payment in full of all Obligations when the same shall become due . . . (collectively, the 'Guaranteed Obligations') . . . ." (emphasis added).

Section 7.2 of the Loan Agreements (Payment by Guarantors) further provides that "[e]ach Guarantor *jointly and severally* hereby agrees . . . that upon the failure of the Borrower to pay any of the Obligations when and as the same shall become due, . . . such Guarantor will upon demand pay, or cause to be paid, in Cash, to the Administrative Agent for the ratable benefit of Secured Parties, an amount equal to the sum of the unpaid principal amount of all Guaranteed Obligations then due as aforesaid, accrued and unpaid interest on such Guaranteed Obligations . . . and all other Guaranteed Obligations then owed to the Secured Parties as aforesaid . . . ." (emphasis added).

[5] The Judgment Amount is calculated through the end of June 14, 2024. Postpetition interest continues to accrue at a per diem amount of $31,889.16 per day. The Judgment Amount is less than the "at least $100 million" figure in the Decision after deducting the Ranch sale credit bid price.

limit the Trust's guarantor liability to the "fair market value" of the Trust Collateral. *See* Loan Agreements § 7.1 (the "Limited Guaranty Provision") ("[T]he Guaranteed Obligations of the Trust shall be limited to not exceed the fair market value of the Trust Collateral . . . ."). There is no similar provision that purports to limit Souki's or the Debtor's liability, making this an issue that applies only to a judgment against the Trust.

5. The Trust Collateral is the Trust's 50% ownership interest in Ajax Holdings LLC ("Ajax"), the Soukis' family office and commercial real estate investment vehicle. As the Court is aware, Ajax owns several properties through its subsidiaries.[6] There is a dispute as to the value of the Ajax shares and, in turn, the Trust's liability, because the Soukis burdened Ajax with insider loans, which the Secured Parties believe are subject to recharacterization or avoidance.[7]

6. The Secured Parties respectfully submit that these Trust-specific valuation issues should not further delay entry of a final judgment against the Debtors and Souki. Rule 54(b) provides a mechanism for the Court to enter a final judgment against some parties and on some claims while deferring judgment against other parties and on other claims. The Court should exercise its discretion to enter a partial judgment under Rule 54(b) in order to prevent additional delay and potential prejudice to the Secured Parties. The Secured Parties respectfully request that the Court grant this motion and enter a proposed final judgment in the form attached hereto as **Exhibit B** (the "Proposed Judgment").

---

[6] Strudel owns the other 50% of Ajax, but its guaranty obligation is not subject to a limitation of liability provision, rendering Strudel jointly and severally liable for the full Judgment Amount.

[7] In the Decision, the Court noted that "The Court's finding of fact and conclusions of law here are without prejudice to the Debtors' right to assert derivative claims that are property of the Debtors' estates." Decision at 32 n.234.

**ARGUMENT**

I. **THE COURT SHOULD EXERCISE ITS DISCRETION TO ENTER A PARTIAL JUDGMENT UNDER RULE 54(b) AS TO SOUKI AND THE DEBTORS.**

7. Rule 54(b) states in pertinent part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

8. The Supreme Court has explained that entering judgment under Rule 54(b) as to fewer than all claims or parties requires a two-step analysis. First, the Court must "determine that it is dealing with a 'final judgment.'" *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980) (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). If so, the Court must then "determine whether there is any just reason for delay." *Id.* at 8; *accord Halliburton Energy Servs., Inc. v. NL Indus.*, No. CIV.A. H-05-4160, 2008 WL 2697345, at *3 (S.D. Tex. July 2, 2008), *aff'd sub nom. Halliburton Energy Servs., Inc. v. NL Indus. Inc.*, 306 F. App'x 843 (5th Cir. 2009). Both steps are easily satisfied here.

   A. **The Court's Decision, Following a Full Trial on the Merits, Finally Determined All Claims Amongst All the Parties.**

9. Under the Supreme Court's decisions in *Curtiss-Wright* and *Sears*, to count as a "final judgment" a court order "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright*, 446 U.S. at 7 (quoting *Sears*, 351 U.S. at 436). The Decision plainly meets these requirements.

10. The context in which the Decision was rendered leaves no doubt that it was an ultimate disposition of the claims and counterclaims for relief asserted in the Adversary Proceeding. The Court entered the Decision after, and based on the evidence presented during, a four-day plenary trial, and no further proceedings are contemplated within the Adversary Proceeding.

11. The language in the Decision likewise makes clear that it is a final resolution of the parties' claims. The Court held "the Secured Parties acted in good faith and were commercially reasonable manner in every aspect of disposing the collateral. *So Plaintiffs lose on all their claims.*" Decision at 2 (emphasis added). Similarly, in a section titled, "The Secured Parties' Breach of Contract Claim Establishing $100 Million Outstanding Debt Stands; Plaintiffs' Claims Do Not," the Court held that the Plaintiffs/Counterclaim-Defendants' "claim fails" and their "lawsuit doesn't eliminate any debt owed by Plaintiffs to the Secured Parties." *Id.* at 27-28. The Court also held that "Borrower and guarantors are liable under the Loans" and ordered that "Souki, in his capacity as borrower, and Strudel, AVR, and the Trust, in their capacity as Guarantors under the Loans, owe the Secured Parties at least $100 million." *Id.* at 28; *see also id.* at 2 ("The Court also finds that the lenders are still owed at least $100 million in damages."). The Court went on to order that "each of Plaintiffs' claims and causes of action in this Adversary Proceeding are denied" and that Souki and the Debtors, along with the Trust, "owe the Secured Parties at least $100 million." *Id.* at 32.

12. In short, the entire purpose of the Decision was to finally resolve the claims and counterclaims asserted in the Adversary Proceeding "[b]ased on the evidence" presented at trial. Decision at 2. The Decision is a final judgment under the first step in the Rule 54(b) analysis.

7

### B. There Is No Just Reason to Further Impede the Secured Parties' Ability to Recover What They Are Owed by Delaying Entry of the Final Judgment Against Souki and the Debtors.

13. Regarding the second step in the Rule 54(b) analysis, the Supreme Court has instructed that courts are afforded "sound judicial discretion" to determine that no just reason for delay exists. *See Curtiss-Wright*, 446 U.S at 8. In exercising its discretion, the Court must consider the "equities involved" and "judicial administrative interests." *Id.* (quoting *Sears, Roebuck, & Co.*, 351 U.S. at 438). The Fifth Circuit has explained Rule 54(b) "reflects a balancing of two policies: avoiding the 'danger of hardship or injustice through delay which would be alleviated by immediate appeal' and 'avoid[ing] piecemeal appeals.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000) (quoting *PYCA Indus. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1421 (5th Cir. 1996)). A party seeking entry of judgment under Rule 54(b) is not required to demonstrate harsh or unusual circumstances to merit a ruling in its favor. *Cardinal Health*, 2007 WL 1026347, at *4 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. at 9 (1980)). Here, further delay would undoubtedly work hardship and injustice on the Secured Parties by forcing them to wait even longer to recover amounts that have been due and owing for over four years, while giving Souki an opportunity to secrete assets that could otherwise be used to satisfy his debt. On the other side of the balance, the proposed judgment poses no risk of piecemeal appeals because the only remaining issues after it is entered—the effect of the Trust limitation of liability provision and the value of the Trust's Ajax equity—is separate from and has no bearing on the merits of any other party's liability established in the Decision.

14. The Supreme Court has identified certain factors to guide the determination that there is no just reason for delay in entering judgment under Rule 54(b). Courts should look to "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined are such that no appellate court would have

8

to decide the same issues more than once even if there [are] subsequent appeals." *H & W Indus., Inc. v. Formosa Plastics Corp.*, 860 F.2d 172, 175 (5th Cir. 1988) (citing *Curtiss-Wright Corp.*, 446 U.S. at 8).

15. In implementing this guidance, courts in this District often consider several more granular factors originally enumerated by the Sixth Circuit:

> (1) the relationship between the adjudicated and the unadjudicated claims;
>
> (2) the possibility that the need for review might or might not be mooted by future developments in the [bankruptcy] court;
>
> (3) the possibility that the reviewing court might be obliged to consider the same issue a second time;
>
> (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final;
>
> (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *9 (S.D. Tex. Jan. 31, 2008) (quoting *Akers v. Alvey*, 338 F.3d 491, 495 (6th Cir. 2003)); *see also Halliburton Energy Servs., Inc. v. NL Indus.*, Civil Action Nos. H-05-4160 and H-06-3504, 2008 WL 2697345, at *3 (S.D. Tex. July 2, 2008). Here, each of the factors weighs in favor of finding there is no just reason to delay entry of a final judgment.

16. *There Are No Remaining Unadjudicated Claims.* The Decision resolves all of the claims and counterclaims asserted in the Adversary Proceeding—there are no unadjudicated claims left. The only issue preventing entry of judgment as to the Trust is the scope of the Trust's liability in light of a Limited Guaranty Provision in the Loan Agreements, which may require an analysis of the value of the Ajax shares pledged by the Trust. This issue was not raised in any claim, counterclaim, or defense asserted by any party in the Adversary Proceeding and was not the

subject of evidence or testimony presented during the trial. It is a discrete issue that applies only to the Trust.

17. *There Is No Possibility That Any Appellate Review Would Be Mooted.* There is no prospect that the need for appellate review might be mooted by future developments in this Court. The sole remaining issue for this Court to decide is the effect and scope of the limitation of liability as to the Trust. It is a matter of how much of the Judgment Amount the Trust is liable for, not whether or not it is liable. That determination has no bearing on the Court's conclusions that Souki, the Debtors, and the Trust breached the Loan Agreements while the Secured Parties did not, and will have no impact on any appellate court's review of the merits of the underlying claims among the parties.

18. *There Is No Possibility of Multiple Duplicative Appeals.* Likewise, any reviewing court will not need to review the same issues twice. Because the extent and scope of the limitation of liability played no role whatsoever in the Decision, any appeal of the Decision will not address those questions. Conversely, the enforceability of the Trust limitation of liability and the value of the Trust's Ajax shares will not depend on any of the conclusions or holdings in the Decision, and any appeal of a later judgment as to the Trust on this issue will not require an appellate court to revisit its analysis of the Decision.

19. *The Putative Trust Limitation of Liability Cannot Result in a Set-Off for Souki or the Debtors.* There is no claim or counterclaim that could result in a set-off of a judgment against Souki and the Debtors, because the purported Limited Guaranty Provision applies only to the Trust. *See* Loan Agreements §§ 7.1-7.2. The Court denied all of the Plaintiffs/Counterclaim-Defendants (including the Trust's) claims and causes of action and declared that the

Plaintiffs/Counterclaim-Defendants (including the Trust) owe the Defendants at least $100 million.

20.     *Other Miscellaneous Factors All Favor Entering Judgment Against Souki and the Debtors Immediately.*  The Court's Decision was a pivotal moment in the Debtors' bankruptcy cases and the parties' years-long dispute.  The mediation having proven unsuccessful, prompt entry of judgment against Souki and the Debtors will help promote a swift final resolution of the chapter 11 cases and is in "the interest of sound judicial administration." *Curtiss-Wright*, 446 U.S. at 5.  Moreover, as this Court is aware, the Secured Parties have been attempting to collect on their defaulted loans for several years and across several state courts.  It would be unjust to allow for further delay based solely on a discrete issue that will have no impact on the scope of Souki's or the Debtors' liability.

21.     In short, Souki and the Debtors have spent years shirking their contractual commitments to repay the money Souki borrowed, while forcing the Secured Parties to spend millions of dollars to protect their clear contractual rights.  The Court should enter final judgment as to Souki and the Debtors so that the Secured Parties can take appropriate next steps in recovering amounts owed under this Court's Decision.  That the extent of the Trust's liability may require further analysis should not prevent the Secured Parties from finally recovering the money they are owed by Souki and the Debtors.

## II. EMERGENCY RELIEF IS APPROPRIATE.

22.     The Secured Parties submit that emergency consideration of the motion is warranted.  It has been over two months since the Court issued its Decision.  Shortly after the Decision, the Secured Parties informed the Plaintiffs/Counterclaim-Defendants that they intended to seek entry of a judgment and provided the Plaintiffs/Counterclaim-Defendants with a detailed

account of the anticipated judgment sums and a draft proposed judgment. The Secured Parties repeatedly asked the Plaintiffs/Counter-Claim Defendants for their comments and asked if they had questions about the calculation, but two months have passed and they provided none other than to raise the Limited Guaranty Provision for the first time. Further, to facilitate a constructive resolution through the mediation process, the Secured Parties delayed seeking entry of the judgment. The Secured Parties negotiated a provision in the mediation order that prevented the Plaintiffs/Counter-Claim Defendants from transferring their assets during the mediation period and that provided the Secured Parties with protection. *See* Mediation Order, Dkt. No. 143, ¶ 6(iii). With the mediation period now concluded, the Secured Parties no longer have that protection and must take action to maximize recovery on the Judgment Amount. Further, a considerable amount of time has elapsed since the Court rendered the Decision and it is imperative that the Court address this matter with expedience to ensure a just and timely conclusion.

## **CONCLUSION**

23.     For the forgoing reasons, the Secured Parties request that the Court grant the Motion and enter the Final Judgment against Souki and the Debtors in the form attached hereto as **Exhibit B**.

*[Remainder of page intentionally left blank]*

Dated: June 14, 2024

Respectfully,

| | |
|---|---|
| ORRICK HERRINGTON & SUTCLIFFE LLP | ALSTON & BIRD LLP |
| | |
| */s/ Darrell S. Cafasso* | /s/ *Sam Bragg* |
| Darrell S. Cafasso* | Sam Bragg |
| Laura Metzger* | Texas Bar No. 24097413 |
| David Litterine-Kaufman* | S.D. Tex. Bar. No. 3395594 |
| Nicholas A. Poli* | 2200 Ross Avenue |
| Harry F. Murphy* | Dallas, Texas 75201 |
| 51 West 52nd Street | Telephone: (214) 922-3400 |
| New York, NY 10019 | Facsimile: (214) 922-3899 |
| Telephone:  (212) 506-5000 | Email: Sam.Bragg@alston.com |
| E-mail:  dcafasso@orrick.com | |
| lmetzger@orrick.com | William Hao* |
| dlitterinekaufman@orrick.com | 90 Park Avenue |
| npoli@orrick.com | New York, New York 10016 |
| hmurphy@orrick.com | Telephone: (212) 210-9400 |
| | Facsimile: (212) 210-9444 |
| Ryan Wooten | Email: William.Hao@alston.com |
| Texas Bar No. 24075308 | |
| S.D. Tex. Bar No. 1259974 | Chris Riley* |
| 609 Main Street, 40th Floor | 1201 West Peachtree Street |
| Houston, TX 77002 | Atlanta, GA 30309 |
| Telephone: (713) 658-6617 | Telephone: (404) 881-7000 |
| Email: rwooten@orrick.com | Facsimile: (404) 881-7777 |
| | Email: Chris.Riley@alston.com |
| James W. Burke* | |
| 1152 15th Street, N.W. | *Attorneys for Wilmington Trust National Association* |
| Washington, D.C. 20005 | |
| Telephone: (202) 339-8400 | |
| Email: jburke@orrick.com | *Admitted pro hac vice* |
| | |
| *Attorneys for Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., and UBS Asset Management (Americas) LLC* | |

## CERTIFICATE OF ACCURACY

I certify that the facts and circumstances described in the above pleading giving rise to the emergency request for relief are true and correct to the best of my knowledge, information, and belief. This statement is made pursuant to Bankruptcy Local Rule 9013-1(i).

/s/ *Darrell S. Cafasso*
Darrell S. Cafasso

## CERTIFICATE OF SERVICE

I certify that on June 14, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Darrell S. Cafasso*
Darrell S. Cafasso